# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF COLUMBIA

# FILED

## JUL 2 4 2015

**Clerk, U.S. District and
Bankruptcy Courts**

**LEE M. DETAR III**

**Plaintiff,**

Vs.

Case: 1:15-cv-01209   Jury Demand
Assigned To : Chutkan, Tanya S.
Assign. Date : 7/24/2015
Description: Pro Se Gen. Civil  (F Deck)

**Defendants.**

1. **UNITED STATES GOVERNMENT**
2. **DEPARTMENT OF DEFENSE** 4000 Defense Boulevard, Washington DC 20301
3. **DEFENSE INTELLIGENCE AGENCY** 260 MacDill Blvd, Washington DC 20340
4. **CENTRAL INTELLIGENCE AGENCY** 1000 Colonial Farm Road, Mclean VA 22101
5. **FEDERAL MANAGEMENT AGENCY** 500 C st. SW Washington DC 20024
6. **JOHN DOE(S)**

# COMPLAINT

AND NOW, comes the Plaintiff, LEE M. DETAR III, representing himself, Pro Se and files this complaint and in support thereof, aver as follows:

## *JURISDICTION*

1.    This court has jurisdiction under 28 U.S.C. $ 1331. Federal question jurisdiction arises from 42 U.S.C. $ 1983.

## *VENUE*

2.    Venue is proper pursuant to 28 U.S.C. $ 1391 because one of the defendants if a federal government agency operating in this district.

## *PARTIES*

3.    Plaintiff, LEE M. DETAR III, address undisclosed for safety reasons.

4.    Defendant, FEDERAL GOVERNMENT OF THE UNITED STATES OF AMERICA.

5.    Defendant, DEPARTMENT OF DEFENSE, 4000 Defense Boulevard, Washington, DC 20301

6.    Defendant, DEFENSE INTELLIGENCE AGENCY, 200 Mac Dill Blvd, Washington, DC 20340

7.    Defendant, CENTRAL INTELLIGENCE AGENCY, 1000 Colonial Farm Road, McLean, VA 22101

8.    Defendant, FEDERAL EMERGENCY MANAGEMENT AGENCY, 500 C Street SW, Washington, DC 20024

9.    John Doe(s) in reference to any party which may be discovered to have liability during this course of this proceeding.

*SUMMARY*

10.     Defendant(s) deprived Plaintiff of his constitutionally protected rights as enumerated in the Constitution of United States of America and deprived the Plaintiff of his human rights as protected by treaty, international agreement, and/or by precedent after the Plaintiff witnessed corruption by the Federal Emergency Management Agency in 2003 and 2004 to present.

11.     Defendant(s) conspired with, deceived, defrauded others in an effort to deprive plaintiff of rights not limited to but including the Plaintiff's right to self-determination, right to liberty, right to due process of law, right to freedom of movement, right to freedom of expression, right to freedom of speech, right to freedom of the press, right to freedom of thought, right to freedom of religion, right to peaceably assemble, right to freedom of association, right to bear arms, parental rights, reproductive rights, right to be secure in his person, houses, papers, and effects, against unreasonable searches and seizures, in his right to equal treatment in access to legal representatives, congressional representatives, housing, right to privacy, and other civil & human rights as described herein.

12.     Defendant(s) were motivated to silence and discredit possible whistleblower testimony and attempted disclosure to the press on several actions of the defendant(s).

13.     An example of one instance following the Plaintiff's attempt to contact the press after Hurricane Katrina in 2005, the defendant(s) began a harassment and defamation campaign against the Plaintiff.

14.     In subsequent actions the Defendant(s) eventually escalated matters over a period of years to effect the full destruction of the Plaintiff's life.

15.     Defendant(s) actions caused the plaintiff years of emotional anguish, eventually destroyed plaintiff's career in January of 2014, destroyed plaintiff's social life and reputation irrevocably in 2013, destroyed plaintiff's family in July of 2013, ruined the future of Plaintiff's children in 2013 and 2014, and defrauded the plaintiff out of nearly all of his income and assets in 2013 and 2014.

16.     Defendant(s) continued their actions against the plaintiff over the course of years despite the obvious harm to the plaintiff, to the plaintiff's children, and to the plaintiff's family, and despite the plaintiff's protest and lack of consent.

17.     Defendants destroyed totality of Plaintiff's life through defamation and harassment

maintained by such tactics as obstructing the ability of the Plaintiff to secure legal assistance from authorities and through financial sabotage to limit the Plaintiff's ability to defend himself including the destruction of social relations to limit support thereby covering up corruption and other illegalities to which the Plaintiff was either witness or victim.

## STATEMENT OF FACTS

18.     Defendant(s) knowingly and with malice defamed the Plaintiff to the Plaintiff's friends and family, in effect to the Plaintiff's community, by asserting the Plaintiff was a homosexual, a bisexual, a gender confused individual, a rapist, a racist, a pedophile, a Christian zealot, a criminal, and other pejoratives.

19.     Defamatory statements as stated in paragraph 18 on page 4 of this complaint affecting deprivation of the rights stated paragraph 11 on page 3 of this complaint were made to Plaintiff's wife Erika Metting in the summer of 2011 calling Plaintiff a pedophile and convincing her to conspire against the Plaintiff's rights framing him as mentally ill when defendants knew it was not true.

20.     Plaintiff became aware of these defamatory statements when told by Jennifer Milio in September of 2013 when discussing the custody of the Plaintiff's children.

21.     Defamatory statements were made as stated in paragraph 18 on page 4 of this complaint affecting deprivation of the rights stated paragraph 11 on page 3 of this complaint to the Plaintiff's father Lee M. Detar Jr in July and August of 2013 calling Plaintiff homosexual and a sex addict convincing Lee M. Detar Jr. to conspire against the Plaintiff and assist the defendants in destroying the Plaintiff's marriage and to sabotage the Plaintiff's custody proceedings.

22.     Plaintiff became aware of these statements indirectly through conversations with Lee M. Detar Jr in June 2013, July 2013, August 2013, September 2013, October 2013, November 2013, December 2013, and January of 2014 when discussing the dissolution of the Plaintiff's marriage and the custody of the Plaintiff's children.

23.     In January 2014 the defendant's actions resulted in the total dissolution of relations between the Plaintiff and his father Lee M. Detar Jr.

24.     Defamatory statements were made as stated in paragraph 18 on page 4 of this complaint affecting deprivation of the rights stated paragraph 11 on page 3 of this complaint to Plaintiff's immediate and extended family specifically April Detar, Chris Magent, Dennis Detar, Sharon

Detar, Lauren Goletz, Bill Otto, Gary Hampton, et al calling the Plaintiff mentally ill as well as other derogatory statements when the defendants knew it was not true for many years up to present resulting in the dissolution of familial relations.

25.     The Plaintiff became aware of these statements directly and indirectly from conversations and family interactions in 2013.

26.     In the spring of 2013 at a family anniversary gathering at the Tin Angel restaurant at 1200 Grandview Ave., Pittsburgh, PA 15211 for Rich Genusso and Kathy Genusso the Plaintiff became aware of defamatory statements made to the Plaintiff's wife Erika Metting and the Plaintiff's second cousin Lauren Goletz indicating that they were conspiring against the Plaintiff to frame him as mentally ill and in need of the derogatory harassing treatment the family was engaging in towards the Plaintiff and about to engage in the near future.

27.     Defendants made defamatory statements as stated in paragraph 18 on page 4 of this complaint affecting deprivation of the rights stated paragraph 11 on page 3 of this complaint to the Plaintiff's Aunt Kathy Genusso in June 2013, July 2013, August 2013, September 2013, and October 2013 calling the Plaintiff sexually promiscuous when the defendants knew it was not true convincing Kathy Genusso to conspire against the Plaintiff to assist them in destroying the Plaintiff's marriage and sabotaging custody of the Plaintiff's children.

28.     Defendants made defamatory statements as stated in paragraph 18 on page 4 of this complaint affecting deprivation of the rights stated paragraph 11 on page 3 of this complaint to Plaintiff's sister and dentist Dr. April A. Detar in June 2013, July 2013, August 2013 calling Plaintiff homosexual, abusive, a pedophile, and mentally ill, convincing Dr. Detar to conspire against the Plaintiff to assist them in destroying the Plaintiff's marriage and sabotaging custody of the Plaintiff's children and to cause mental anguish for the Plaintiff, as well as, to subvert justice.

29.     Defendants made defamatory statements as stated in paragraph 18 on page 4 of this complaint affecting deprivation of the rights stated paragraph 11 of page 3 of this complaint to Plaintiff's family members Tom Picarsic, Gary Hampton, Bill Otto, April Detar, et al. that the Plaintiff became aware of at two family functions Thanksgiving Dinner of 2013 and Christmas Eve of 2013 which convinced the Plaintiff's family members to conspire against the Plaintiff's marriage and custody of Plaintiffs children as well as depriving the Plaintiff of familial support common during such life events.

30.     This resulted in total dissolution of extended family relations on December 24th 2013 when the Plaintiff called the police to 600 Maple Ave., Penn, PA 15675 to report the family members for conspiracy and intimidating harassment.

31.     Defendant(s) intentionally and with malice made defamatory statements as stated in paragraph 18 on page 4 of this complaint affecting deprivation of the rights stated paragraph 11 on page 3 of this complaint deceiving and coercing the Plaintiff's spouse, Erika Metting, in order to destroy the Plaintiff's marriage and convince Erika Metting to spy on the Plaintiff, harass the Plaintiff, conspire, frame, setup the plaintiff, and to use her to manufacture negative events and information concerning the Plaintiff in order to control the Plaintiff's life in such a way as to ensure the Plaintiff was not able to report the activities of the defendants to the relevant authorities or to the press.

32.     Defendant(s) intentionally and with malice made defamatory statements as stated in paragraph 18 on page 4 of this complaint affecting deprivation of the rights stated paragraph 11 on page 3 of this complaint and as stated in paragraph 28 page 5 of this complaint in order to receive cooperation from Erika Metting in such a way that the Plaintiff's spouse would continue her actions against the Plaintiff and the Plaintiff's children unabated through the course of their marriage to present.

33.     Defendant(s) made defamatory statements as stated in paragraph 18 on page 4 of this complaint affecting deprivation of the rights stated paragraph 11 of page 3 of this complaint and also paragraph 29 paragraph 5 in attempting to frame the Plaintiff as a mentally ill and violent individual in June 2013 and July 2013 wanting to harm innocent people, and instead of justice for his family including his wife Erika Metting.

34.     Defendant(s) committed actions as stated in paragraph 33 on page 6 of this complaint in such a way as to attempt to convince people if anything occurred to Plaintiff's spouse it was due to the Plaintiff's actions.

35.     Defendants conspired with the Plaintiff's spouse Erika Metting to file for a Protection From Abuse Order pursuant to Pennsylvania Protection From Abuse Act 23 Pa. C.S.A. § 6101 from the Pennsylvania Common Wealth Courts in Allegheny County Pennsylvania in July 2013 in an effort cover-up Erika Metting and the defendants' activities.

36.     Defendants subverted due process and justice for the Plaintiff and for the Plaintiff's children by hijacking the family court processes described in paragraph 21 on page 4 of this complaint as well as subsequent custody proceedings in Allegheny County Pennsylvania from 2013 to present and coercing the Plaintiff's attorneys or potential attorney's to misrepresent themselves and the Plaintiff's interests in proceedings.

37.     Defendants committed the acts stated in paragraph 35 on page 6 of this complaint in July 2013 and August 2013 when the defendants coerced Michael J. DeRiso to act as the Plaintiff's

attorney in the Protection From Abuse proceedings the defendants knew to be fraudulent and to have Michael J. DeRiso sign an order for a continuance against the Plaintiff's wishes thereby sabotaging the court proceedings.

38.    Defendants again committed the acts stated in paragraph 35 on page 6 of this complaint in July 2013 and August 2013 when the defendants coerced Michael J. DeRiso to act as the Plaintiff's attorney in the Protection From Abuse proceedings and had Michael J. DeRiso ignore the due process violation of the courts pertaining to the Pennsylvania Protection From Abuse Act 23 Pa. C.S.A. § 6101 which states that defendants in such actions are entitled to a hearing within 10 days.

39.    Defendant(s) defrauded the Plaintiff of his house and nearly all his possessions as retaliation for the Plaintiff attempting to report the defendants and their accomplices to the relevant authorities and to ensure the Plaintiff would not be able to afford adequate defense or legal counsel to obtain justice, as well as, to ensure the Plaintiff was discredited appearing destitute of his own accord and not as the result of the defendants' actions.

40.    Defendant(s) provoked and manipulated Plaintiff's actions in an effort to frame defendant and capture events or actions of plaintiff that would not have existed by normal action or personality of the plaintiff in an effort to manufacture negative information about the Plaintiff. This included but was not limited to:

   A. Provocation via internet hacking resulting in reactive communications to others in email, phone, text, etc. from the Plaintiff.

   B. Provocation via cell phone or phone tampering resulting in reactive communications to whomever the Plaintiff was talking to or immediately following.

   C. Provocation via noise towards the places the Plaintiff was located or residing resulting in reactive actions and relations between the Plaintiff and anyone he was with or around.

41.    Defendant(s) bribed or coerced women the Plaintiff was or would be romantically interested in to attempt to manipulate or frame defendant and in an effort to manipulate or control Plaintiff's life decisions or to create circumstances in which the Plaintiff would look bad.

42.    Defendant(s) intentionally defamed plaintiff as mentally ill in an effort to cover for their ongoing crimes against plaintiff even so far as telling people that their crimes against plaintiff are to help with the mental health problems they themselves are/were fabricating.

43.    Defendant(s) committed fraud by deceiving local authorities and others as to the

employment status of the Plaintiff telling them that the Plaintiff was still employed in the US Intelligence Community and that their operations were only trainings or test exercises thereby defrauding those entities and rendering the Plaintiff without legal recourse.

44.     Defendant(s) conspired to create events or manufacture/fabricate evidence concerning the Plaintiff's character in an effort to justify their defamation of the Plaintiff, literally attempting to make their lies appear true sometimes after the fact.

45.     Defendant(s) on or about November of 2006 provided free alcoholic beverages to the Plaintiff and then coerced the Plaintiff into driving a vehicle resulting in an auto accident and a charge of Driving Under the Influence.

46.     Defendant(s) on or about November of 2013 attempted to plant drug paraphernalia which would make it look like Plaintiff was a drug user to police or anyone else he disclosed evidence to in an effort to intimidate and discredit Plaintiff and in order to intimidate the Plaintiff into compliance with directives of the Defendant(s).

47.     Defendant(s) tampered with online social accounts of Plaintiff in an attempt to sabotage Plaintiff's right and ability to freely associate in an effort to render Plaintiff without social support and to curtail the ability of the Plaintiff to communicate the details of the crimes against himself, his children, and other children, as well as, to portray the Defendant negatively in an attempt to justify the defendant(s) defamation of the Plaintiff.

48.     Defendant(s) attempted through the hacking of Plaintiff's smart phones and internet usage to connect Plaintiff to extremist groups such as FreedomFCHS which defendant(s) themselves held partial operation over in an attempt to manipulate the Plaintiff's decisions and actions through the use of indirect threats of harm towards the Plaintiff as well as threats to further defame the Plaintiff.

49.     Defendant(s) knowingly and with malice used the Plaintiff's discredited reputation in an effort to use the Defendant for testing of classified devices and weaponry. Errantly believing most people would not believe the implantation of RFID chips in a person (when the practice has been common for animals for decades), Defendant(s) attempted to conceal this human rights abuse and crime with manufactured allegations that the Plaintiff was suffering from mental health problems in order to cover-up their actions.

50.     Defendant(s) attempted to make plaintiff appear as if his normal reactions to harassment were an internal problem with the Plaintiff's mental health in an effort to cover for the Defendant(s) actions.

51.     Defendant(s) initiated and maintained a noise campaign where the Plaintiff resided or was temporarily located.

52.     Defendant(s) tampered with the Plaintiff's access to emergency services in the localities where the Plaintiff resided or frequented, like police services, in an effort to harass, intimidate, obstruct justice, and cover-up the defendant(s) actions as well as in an effort to render the Plaintiff helpless against crimes committed upon him and his children.

53.     Defendant(s) knowingly manipulated Plaintiff's home and work environments family and co-workers creating intentional safety hazards and hostile environment s for the Plaintiff which endangered the Plaintiff and the people around the Plaintiff.

54.     Defendant(s) hacked the Plaintiff's smart phones and internet connections in order to tamper with employment opportunities or to directly sabotage the Plaintiff's freelance business.

55.     Defendant(s) tampered with Plaintiff's employment at Family Behavioral Resources from December of 2012 until December of 2013 creating a severely provoking, hostile, and endangering environment for the plaintiff and the plaintiff's clients including threats towards the plaintiff in an effort to frame and defame the plaintiff to discredit or coerce silence as to the Defendant(s) activities.

56.     Defendant(s) tampered with the Plaintiff(s) employment environment creating a hostile environment intimidating the Plaintiff into silence at the following employers:

   A. Woodside Staffing for the Federal Emergency Management Agency, 2003-2004

   B. Woodside Staffing for the Administration on Aging, 2004

   C. Titan Corporation for the Administration on Aging and other Department of Health and Human Services Agencies, 2004-2005

   D. L3 Communications for the Administration on Aging and other Department of Health and Human Services Agencies, 2005-2006

   E. Hudson Global, Inc. for Olympic Steel Inc. and Steel Warehouse Company, 2006

   F. Volt Technical Services for VMC Consulting and Microsoft Corporation, 2007

   G. Employee Benefit Data Services, 2008

   H. Kotary, Detar and Associates, 2009-2010

   I. Plaintiff's Self Employment 2010-Present

J. Family Behavioral Resources 2012 to 2014.

K. Hotel Morgan Spring of 2014.

L. Teletech

M. Kelly Services

N. Pace Enterprises.

O. MTI

56.     Defendant(s) exploited the Plaintiff's clients, all minor children, at Family Behavioral Resources resulting in the Plaintiff's attempting to report the client families for child exploitation causing distress to the Plaintiff when authorities were non-responsive.

57.     Defendant(s) used the local police departments where the Plaintiff either resided or was known to be located in an effort to oppress and harass the Plaintiff, intentionally delaying further reporting of crimes and making reporting of crimes by the Plaintiff appear to be useless thereby obstructing justice for the Plaintiff and endangering the Plaintiff and the Plaintiff's children.

58.     Defendant(s) further coerced Plaintiff's spouse Erika Metting into framing Plaintiff to assist in attempting to cover-up their exploitation of special needs children at Family Behavioral Resources where the Plaintiff was employed as a Therapeutic Support Specialist.

59.     Defendant(s) on or about October 2011 conspired with the Plaintiff's spouse, other family members, et al. to frame and/or defame Plaintiff as mentally ill after the Plaintiff started reporting the Defendant's crimes to the Pittsburgh Police in an effort to discredit and/or intimidate and deter the Plaintiff's future reporting.

60.     Defendant(s) continually attempted to frame and setup Plaintiff to make Plaintiff appear criminal, disparage the Plaintiff as mentally ill, and then use that appearance in an effort to intimidate, coerce, enslave, and control Plaintiff's actions against Plaintiff's will.

61.     Defendant(s) and/or accomplices broke into Plaintiff's residence at 206 Stoy St. Penn, PA 15675 on or about November 24, of 2013 and stole a binder of evidence against Erika Metting, the Plaintiff's spouse, which was to be used by the Plaintiff in custody proceedings against Erika Metting in an effort to obstruct justice for the Plaintiff and the Plaintiff's children.

62.     Defendant(s) obstructed justice by interfering with reporting of criminal activity to

various local, state, and federal agencies and departments including but not limited to:

A. Pennsylvania Children Youth and Families for abuse and crimes against children.

B. City of Pittsburgh Police Department for sexual assault against the Plaintiff and the abuse of his children by Erika Metting.

C. Pennsylvania State Attorney General's Office for:

i. Medical Fraud against the Plaintiff's son.

ii. Violation of the Plaintiff's Due Process Rights in the Common Wealth Courts of Pennsylvania.

iii. Conspiracy, Racketeering and Fraud by the Defendant(s), their accomplices, et al.

D. Pennsylvania State Police for all the aforementioned crimes.

E. Federal Bureau of Investigation for aforementioned crimes and civil rights abuses with a federal component or which would demand federal action.

62.     Defendant(s) intentionally obstructed justice by tampering with the reporting of damages to Pittsburgh Action Against Rape Organization, that the Plaintiff incurred as a result of sexual assault of the Plaintiff by Erika Metting thereby permitting the perpetrator to remain free to continue harm against Plaintiff and his children in order to effectuate further fear in the Plaintiff as a means to exercise control.

63.     Defendant(s) knowingly and intentionally placed Plaintiff's children, through fraudulent means, with Plaintiff's separated spouse (a woman who the defendant(s) knew to have an immoral disposition) in an effort to increase the mental anguish of the Plaintiff by creating lasting harm to the Plaintiff's children.

64.     Defendant(s) sabotaged the Plaintiff's work, business and business relations as well as employment opportunities in an effort to keep Plaintiff intentionally impoverished and unable to afford safety, health, or security for the Plaintiff and his children. Defendant(s) sabotaged activities such as interviews, on or about 2011 through present at the following companies including but not limited to the following companies:

A. GNC Corporation 300 Sixth Avenue, Pittsburgh PA 15222

B. Kaplan Career Institute, 933 Penn Ave, Pittsburgh PA 15222

C. BNY Mellon 500 Grant St, Pittsburgh PA 15219

D. Mylan Inc.5000 Green Bag Road, Morgantown WV 26501

E. Chromalox, Inc. 103 Gamma Dr, Pittsburgh PA 15238

65.     Defendant(s) tampered with Plaintiff's federal tax filings and defrauded Plaintiff and Plaintiff's Tax preparers with the intent to sabotage the Plaintiff's good standing with the state and Federal Tax Authorities and to frame the Plaintiff as negligent and criminal.

66.     Defendant(s) deliberately rerouted internet search results and rerouted phone calls to defendant(s) accomplice organizations and to people with the same or similar names to people responsible for harming Plaintiff, Plaintiff's children and Plaintiff's nephews, as means of intimidation, harassment and obstruction against the Plaintiff. For example, calls were rerouted to women named "Michelle" just after Plaintiff tried to report to Pennsylvania Children Youth and Families to investigate "Michelle" Metting's abuse of Gerald Metting and Michael Metting the Plaintiff's nephews.

67.     Defendant(s) used plaintiff's children and plaintiff's nephews all of which are minors, in the commission of criminal acts, training them like dogs to partake in scenes intended to harm the emotional well-being of the Plaintiff and intimidate the Plaintiff out of the country so that the Plaintiff could not be a witness in any type of legal proceedings.

68.     Defendant(s) deliberately defamed Plaintiff's legal standing to others, stating for example that the Plaintiff lost or won his child custody case when it was not true, in an effort to intentionally manipulate and harm Plaintiff and to sabotage future efforts by the Plaintiff to appeal to the court to have his children removed from the custody of Erika Metting even while the Plaintiff's children were being used in the commission of a crime. Defendant(s) conveyed this message to as many people possible so as to create the effect of large scale torment and despair for the Plaintiff.

69.     Defendant(s) intentionally hacked and tampered with Plaintiff's internet, phone, and other communication devices. For example, reception of broadcasts across internet radio were tampered with in an effort to persistently harass and harm the defendant in such a way as to reduce productivity, concentration, and effectiveness in all aspects of life. Defendant(s) did so in an effort to not only sabotage Plaintiff but to also portray the Plaintiff as dysfunctional in an effort to make the defamation against the Plaintiff appear true as an additional alibi for the defendant(s).

70.     Defendant(s) deceived Plaintiff's friends, family, associates into believing the Plaintiff's natural sexual drive to procreate is a disease thereby deceiving them into a persistent harassment and torment towards the Plaintiff and his natural attraction to members of the opposite sex thereby interfering with the Plaintiff's right to reproduce.

71.     Defendant(s) attacked and coerced Plaintiff's spouse to attack plaintiff's gender with intent to injure his ability to reproduce and conspired with others to do the same. This included sexual assaults against the Plaintiff as well as persistent gender insults, intimidation, and

harassment in an effort to render the Plaintiff sexually dysfunctional.

72.    Defendant(s) attempted to keep Plaintiff in a position of subjugation through continued demeaning comments and suggestions that the Plaintiff was somehow not human, any number of animals like dog, pig, cat, monkey, etc. with the intent to keep the Plaintiff from defending himself, reporting crime, or defending his children thereby coercing compliance from the Plaintiff.

73.    Defendant(s) specifically targeted Plaintiff's children and Plaintiff's children's safety in an effort to retard development and endanger them by keeping them with one of their paid accomplices, Erika Metting. This was done in order to ensure that the Plaintiff would suffer interminable anguish at watching his children's lives be ruined, their mental health be destroyed, and their entire lives remain in danger so as to silence the Plaintiff, defraud the Plaintiff, and to control the Plaintiff's actions.

74.    Defendant(s) coerced and conspired with the Plaintiff's spouse to abuse the Plaintiff's children including but not limited to:

A. Training plaintiff's children in the commission of crimes to attempt to intimidate Plaintiff by the totality of action against him.

B. Sleep Depriving Abigail Detar at age 2 over the summer months of 2012.

75.    Defendant(s) referred to plaintiff's children and significant others as animals like dog, pig, and cow in such a derogatory way so as to suggest dominance and control over them.

76.    Defendant(s) violated Plaintiff's right to privacy with malice violating all forms of common decency both past and present, and harassed defendant to points of emotional damage which due to the accompanying defamation left the Plaintiff having to cope on his own without proper social support or proper health care with intentionally false or misleading diagnoses.

77.    Defendant(s) manipulated or obstructed plaintiff's search for housing in an effort to deprive plaintiff of housing and the right of freedom of association forcing the defendant to choose less accommodating housing or to remain homeless for periods of time.

78.    Defendant(s) attempted to frame and defame plaintiff so as to effect a breach of marital contract between the Plaintiff and his spouse Erika Metting.

79.    Defendant(s) attempted to coerce Plaintiff into Defendant(s) worldview which consisted of the objectification of women by referring to them by their ages and or attractiveness rather

than considering them as whole human beings.

80.     Defendant(s) sabotaged the Plaintiff's music business by defaming the Plaintiff's artistic name and representation abridging the Plaintiff's 1st Amendment Right to freedom of expression for the sole purpose of portraying the Plaintiff in a negative public light to continue to silence and harm the plaintiff thereby depriving the Plaintiff of potential income and social relations.

81.     Defendant(s) attempted to coerce Plaintiff into additional unneeded mental health treatment threatening to withhold custody of his children in an effort to continue to discredit the Plaintiff and deter the Plaintiff's witness against them.

82.     Defendant(s) illegally took Plaintiff's children in conspiracy with Erika Metting with the intent to traumatize them and indoctrinate them into crime as retribution for the Plaintiff attempting to report their child exploitation ring to the Department of Homeland Security Immigration Customs Enforcement.

83.     Defendant(s) harassed, threatened, and physically attacked the Plaintiff in November 2014 and December 2014 in such a way as to attempt to convince the Plaintiff and others that their defamation was true. The defendants hired and/or coerced Susan Moser Esq. and Marko Maya Esq. to act as the Plaintiff's attorneys in his family court case and had them provoke and harass the Plaintiff in an effort to keep his children and cover-up for their crimes.

84.     Defendant(s) utilized an illegal wiretap in an effort to steal private information from plaintiff and used, twisted, and spun this information in order to commit the actions and crimes against the Plaintiff which are enumerated in this complaint.

85.     Finally, the defendants target children who they believe will be genetically interesting and therefore targeted the Plaintiff's family and spouse so they could gain access to Plaintiff's children.

86.     Defendants intentionally and with malice used the Plaintiff's innate drive to protect his children and his wife and his family as means by which to steal his wife and abuse his children. The defendant's did so by continual assault, threat, and other crimes committed against the Plaintiff, against his wife, and against his children for which the defendant's knew the Plaintiff would have to attempt to stop, thereby continually framing and terrorizing the Plaintiff allowing for the defendant's theft.

87.     Defendants fraudulently initiated a fraudulent, false and malicious prosecution for simple

assault in Allegheny County Pennsylvania at Just Harvest Tax Preparation Services. Their fraudulent tax service people obstructed justice when Plaintiff attempted to report the illegal placement of his children to Child Youth and Families of Pennsylvania via phone. They then claimed their obstruction was assault by the Plaintiff creating a false swearing situation to authorities. Defendants then proceeded to rig fake charges attempting to fraudulently prosecute the Plaintiff which could result in false imprisonment if there is no legitimate intervention by authorities.

By doing the acts described above Defendants caused and/or permitted the violation of the Plaintiff's Constitutional, Civil, and Human Rights thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. §1983.

### *Request for Relief*

Wherefore the Plaintiff requests:

1.     A Preliminary Injunction to stop the Defendants from acting towards the Plaintiff in the manner described in this complaint towards Plaintiff.

2.     A Permanent Injunction to stop the Defendants from acting towards the Plaintiff in the manner described in this complaint towards Plaintiff.

3.     Compensatory damages, including general and special damages, according to proof.

4.     Any further relief which the court deem appropriate.

### *Demand for Jury Trial*

Plaintiff hereby requests a jury trial on all issues raised in this complaint.

Dated: 7/24/15

Signature

By: Lee Detar_____

Plaintiff in Pro Se